**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**


**ANTHONY SNEED,**                                                                                    **PETITIONER**

**V.**                                          **CIVIL ACTION NO.:  2:11CV106-MPM-JMV**

**RONALD KING and**
**ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI,**               **RESPONDENTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

Petitioner Anthony Sneed, Mississippi prisoner no. 127401, has filed a federal habeas

petition pursuant to 28 U.S.C. § 2254 challenging his State court conviction for murder.  Having

considered the submissions of the parties, the State court record, and the law applicable to

Petitioner's claims, the Court finds that the petition should be denied.

**Background Facts and Procedural History**

On August 11, 2006, Herman Fair was found dead at the bottom of a set of outdoor stairs

at an apartment building in Friars Point, Mississippi, with his head in a pool of blood.  After an

investigation by law enforcement officials, Anthony Sneed (a/k/a "Trigger"), Anthony Smith

(a/k/a "Sticky"), Thomas German (a/k/a "Tommy C."), Jamario Brady (a/k/a "Mario" or

"Turtle"), and Johnny Bickham were apprehended as suspects.

Earlier on August 11, 2006, a verbal and physical altercation occurred between Fair and

Smith's mother, Leanna Smith (a/k/a "Baddy").  Rotandria Foster, Smith's cousin and

eyewitness to the incident, told Smith about the altercation.  Wanting to speak with Fair about the

altercation with his mother, Smith and the other four defendants walked to Fair's apartment

1

building and waited at the bottom of the stairs for Fair to emerge from his apartment. Foster and Terinesia Burton also walked to the apartment building. Foster testified Fair came downstairs and yelled "Where that bitch ass 'Baddy' at?", and that Smith punched Fair in the face, knocking him to the ground. Foster testified that Brady began hitting Fair with a golf club, and that Smith attempted to stop Brady, telling Brady that Smith did not want to kill Fair. Foster stated that all of the defendants kicked Fair one time while he was on the ground, and that she and four of the defendants fled, leaving Brady still hitting Fair with the golf club. Foster testified that she later heard Brady brag to the other defendants that he killed Fair.

Following witness interviews and a preliminary investigation, all five defendants were interviewed. All five defendants waived their *Miranda* rights and gave statements to Officer Magsby, a criminal investigator with the Coahoma County Sheriff's Department. Brady admitted striking Fair on the leg with the golf club and later led officers to a field where the club was recovered. Smith admitted he punched Fair and knocked him down. Petitioner, German, and Bickham admitted to kicking Fair one time.

The defendants were indicted by a Coahoma County grand jury for deliberate-design murder pursuant to Miss. Code Ann. § 97-3-19(1)(a). Petitioner, Smith, and German each filed a motion to sever their trials from all of the other defendants, and after a hearing on the motions, the motions to sever were all denied. The court ordered that the defendants' statements to law enforcement officials could be used in the State's case-in-chief only after they were redacted to delete any reference to the other defendants.

At trial, Officer Magsby testified as to what each defendant said in his statement, but the jury was instructed before each statement that it could only consider the statement as evidence

against the defendant who gave it. No written statements of the defendants were introduced into evidence.

Dr. Steven Hayne, the pathologist who performed the autopsy on Fair's body, testified that although Fair had scalp injuries consistent with being struck with a golf club, the cause of Fair's death was blunt force to the chest that caused tears to his lungs and bleeding into his chest cavity. Dr. Hayne testified that Fair had one broken rib and bruises and tears on his lungs, and that over three quarts of blood were present in Fair's chest cavity. Dr. Hayne testified that the injuries could be attributed to someone kicking or stomping Fair in the chest.

None of the defendants testified in his own defense, and Petitioner was the only defendant to call a witness. Shelia Croom testified in Petitioner's defense. Croom was the next-door neighbor of Loretta Smith, with whom Fair sometimes lived. She testified that she was with Fair on August 11, 2006, and that he had an argument earlier that day with a man named Dennis Thompson. She stated that she heard a thump outside of her apartment later that evening, and that when she looked out of her window, she saw Thompson crouched over Fair's body, searching through Fair's pants pockets.

At the close of evidence, Petitioner and two other defendants renewed their motions to sever. The court denied the motions. Among the instructions given to the jury were instructions on murder, aiding and abetting, and manslaughter. All of the defendants were found guilty of murder and sentenced to life imprisonment. Each defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which were all denied.

Petitioner appealed his conviction. On August 25, 2009, the Mississippi Court of Appeals affirmed Petitioner's judgment of conviction and sentence in a written opinion. *See*

*Sneed v. State*, 31 So. 3d 33 (Miss. Ct. App. 2009), *reh'g denied*, December 15, 2009, *cert. denied*, March 25, 2010 (Cause No. 2007-KA-00381) (Answer, Ex. A).

Aggrieved of this decision, Petitioner, proceeding *pro se*, filed in the Mississippi Supreme Court an application for leave to file for post-conviction relief. By order filed July 15, 2010, the Mississippi Supreme Court denied the application. (Answer, Ex. B) (Cause No. 2010-M-00789). Petitioner then filed his *pro se* federal habeas petition on or about May 9, 2011, raising the following claims:

Ground One. The trial court erred in denying the motion for severance filed by the petitioner.

Ground Two. Jury instruction C-16, an aiding and abetting instruction, was confusing and lessen[ed] the State's burden of proof.

Ground Three. The verdict was against the overwhelming weight of the evidence.

Ground Four. Petitioner was denied his right to effective assistance of trial and appellate counsel.

Ground Five. Petitioner['s] conviction stems from inconsistent witnesses' testimony that was unworthy of belief.

## Legal Standard

The Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prohibits the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented

evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or that identify the correct governing law but misapply it to the case. *Id*. at 407-08. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A federal habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, and not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

## Discussion

### I. Motion for Severance

Petitioner argues that the trial court erred in failing to grant his request for a severance, as the evidence pointed more to the guilt of his co-defendant, Jamario Brady. He also alleges that the denial of a severance limited his ability to cross-examine witnesses regarding whether any of his co-defendants implicated other co-defendants in their statements to law enforcement officials.

Petitioner, along with his co-defendants, were indicted for murder committed "individually or while aiding and abetting and/or acting in concert with each other[.]" (SCR vol. 1, 8). Three of the defendants, including Petitioner, filed a motion for severance prior to trial,

seeking to be tried separately from each other. (SCR vol. 1, 16-22). The trial court concluded

that severance was not warranted under the facts of the case. (SCR vol. 1, 22A-22H; 25-27).

Specifically, the court found that each defendant admitted some degree of participation in beating

the victim, and that their defenses were not so "inconsistent" as to warrant a severance. (*Id*. at

22F). The trial court determined that, if the State elected to try all of the defendants together,

"no statement, confession, etc. from any defendant shall be used during the State's case in chief.

Such a statement, if admissible, may be used only after the defendant who gave the statement

takes the stand, assuring his availability for cross-examination by the other defendants." (*Id*. at

22G-H). This portion of the order was later amended to reflect that the statements could be used

only after redacting "any reference to any other defendant and or inference thereof." (*Id*. at 27).

During the trial, when the investigator discussed the statement from each defendant,

jurors were repeatedly issued a cautionary instruction to consider the evidence presented against

one defendant only in relation to the defendant against whom the evidence was presented. (SCR

vol. 4, 386, 388, 390, 391-92). The court was presented with a separate motion for severance

from co-defendant Brady during trial, and it denied the motion after considering the evidence in

light of applicable state law. (SCR vol. 5, 496-99). The parties renewed their motions for

severance at the close of the case, and the trial judge again denied those motions. (SCR vol. 5,

537-39).

On appeal, the Mississippi Court of Appeals first noted that, in a non-death penalty case,

the decision to grant or deny a severance lies in the discretion of the trial court. *Sneed*, 31 So. 3d

at 38. Citing its applicable precedent, the court also noted that "[d]efendants who are 'jointly

indicted for a felony are not entitled to separate trial as a matter of right.'" *Id.* (citation omitted).

Rather, the court determined, the applicable factors in deciding whether to grant a motion to sever include : "(1) whether the testimony of one defendant tends to exculpate that defendant at the expense of the co-defendant, and (2) whether the evidence of guilt introduced at trial preponderates more heavily against one defendant than another." *Id*. (citing *Sanders v. State*, 942 So. 2d 156, 159 (Miss. 2006)). The court determined that the "overarching consideration" in evaluating the factors, however, is whether a joint trial would prejudice the defendants, and that in the absence of such prejudice, "the trial court cannot be found to have abused its discretion." *Id.*

Petitioner argued on appeal that the trial court's order limiting the use of the each defendant's statement prevented him from raising the issue of his co-defendants' respective culpability. *Id*. at 39. The Mississippi Court of Appeals noted, however, that no defendant objected to the trial court's "precautionary measure," which was intended to prevent a Sixth Amendment Confrontation Clause issue. *Id*.[1]

The appellate court found that since none of the defendants testified in his own defense at trial, no defendant's testimony was "used to exculpate him at the expense of a co-defendant." *Id*. at 39. The court noted that no exculpatory information was introduced, and that the trial judge only admitted testimony regarding each defendant's statement during the portion of the State's case addressing that individual defendant's admission that he participated in the beating. *Id*. It determined that the defendants could not complain about the precautionary measure taken by the judge and agreed upon by all, as introducing information from the other defendants' statements

---

[1] As noted by the Mississippi Court of Appeals, the Sixth Amendment provides, in relevant part, a criminal defendant with "the right to. . . be confronted with the witnesses against him[.]" *Sneed*, 31 So. 3d at 39 n.2. (citing U.S. Const. amend. VI.).

would have created a Confrontation Clause issue. *Id.*

The Mississippi Court of Appeals noted that none of the defendants denied involvement in the beating, and that while there was "blame-shifting" among the defendants, there were no "inconsistent defenses." *Id.* Specifically, the court noted that each defendant attempted, "during cross-examination of the State's witnesses, to shift more of the blame to Brady for the beating," while acknowledging their own participation in it. *Id.* The court noted that while Petitioner called a witness in his defense, the witness merely testified that she saw someone going through Fair's pants pockets as he lay on the ground. *Id.* It determined that the trial court correctly recognized that blame could not be shifted solely to Brady, as Dr. Hayne's testified that Brady inflicted non-fatal wounds with the golf club, and that Fair died from kicks or stomps to his chest. *Id.*

Addressing the second factor – whether the balance of the evidence "involves one defendant over the others" – the appellate court found that Dr. Hayne's testimony implicated all of the defendants as possibly having delivered the fatal injury to Fair, such that the evidence did not involve one defendant over the others. *Id.* at 40. The court noted that Dr. Hayne did not attribute Fair's chest injuries to blows from a golf club, and it determined that the testimony established that all of the defendants kicked the victim. *Id.* As such, the Mississippi Court of Appeals determined that neither of the two factors weighed in favor of a severance, and that the trial court did not abuse its discretion in denying the motions to sever. *Id.*

Under both federal and Mississippi law, the decision whether to grant a severance lies within the trial court's discretion, and the refusal of a severance warrants reversal only if the trial court abused its discretion. *See Demps v. Wainwright*, 666 F.2d 224, 227 (5th Cir. 1982);

*Stevens v. State*, 717 So. 2d 311, 312-13 (Miss. 1998). The United States Supreme Court does not mandate severance merely because co-defendants have conflicting defenses. *Brown v. Dretke*, 419 F.3d 365, 372 (5th Cir. 2005) (citing *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993)). Rather, a trial court may "provide a limiting instruction to cure any risk of prejudice. *Id*. "Severance should be granted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (citation omitted). Habeas relief is warranted only if the denial of the motion to sever "rendered [Petitioner's] state trial fundamentally unfair and violative of due process." *Demps v. Wainwright*, 666 F.2d 224, 227 (5th Cir. 1982).

In this case, none of the defendants testified against each other. The jury was cautioned repeatedly to consider each individual defendant's admission of participation in the crime independently of the other defendants. All of the defendants admitted participation in the beating of the victim. Much of the same testimony would have been admitted if Petitioner had been tried by himself. Therefore, the Court finds that the proceedings were not rendered unfair because the defendants were jointly tried. Petitioner has failed to demonstrate that the decision rejecting this claim is contrary to, or that it involves an unreasonable application of, clearly established federal law. Petitioner has not demonstrated that the decision rejecting this claim is based on an unreasonable determination of facts in light of the evidence presented. Accordingly, federal habeas relief is denied as to this claim.

## II. Jury Instruction C-16

Petitioner argues that the trial court should not have read Instruction C-16 to the jury, as it was confusing and lessened the State's burden of proof. Specifically, he argues that it allowed

the jury to find him guilty even if he only committed an element of the crime of murder, which is a practice that has been condemned by the Mississippi Supreme Court.

Jury Instruction C-16 provided as follows:

The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense. In this case, the State has charged that these defendants aided and abetted one another in the commission of the crime charged. Aiding and abetting requires some participation in the criminal act and may be evidenced by word, overt act or deed. In order to be found guilty as aiders and abetters of a crime, those Defendants charged as aiders and abetters must possess the same intent as the person principally committing the crime charged. If you believe from the evidence, beyond a reasonable doubt, that the defendants, Jamario Brady, Anthony Sneed, Anthony Smith, Thomas German and Johnny Bickham, or any one of them, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of murder or manslaughter as you so find, immediately connected with such crime, or leading to its commission, and that such defendant or defendants shared the same intent as the person principally committing the crime, then and in that event you should find such defendant or defendants guilty of murder of manslaughter, as you so find.

(SCR vol. 1, 113).

Initially, the Mississippi Court of Appeals determined that Petitioner was procedurally barred from raising a challenge to jury instructions for the first time on appeal. *Sneed*, 31 So. 3d at 44. Generally, "[w]hen a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). In order to obtain review of his claim, Petitioner bears the burden of showing that the State did not strictly or regularly follow a procedural bar around the time of his appeal and must demonstrate that the

State has failed to apply the procedural bar rule to identical or similar claims. *See Smith v. Black*, 970 F.2d 1383, 1386 (5th Cir. 1992). The Fifth Circuit has held that the bar imposed for failure to object at trial, i.e. the contemporaneous objection rule, is regularly and consistently applied by the Mississippi State courts. *Id.* at 1387. Petitioner has not proved an "inconsistent and irregular" application of the procedural bar imposed in this case. *Stokes v. Anderson*, 123 F.3d 858, 861 (5th Cir. 1997)

Petitioner can obtain federal habeas review of a claim defaulted in State court only by demonstrating cause for the default and actual prejudice as a result, or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" in this context is something *external* to the petitioner that cannot be fairly attributed to him. *Id.* at 753 (emphasis in original). While attorney error may constitute "cause" in some instances, attorney error that is not constitutionally ineffective will not excuse a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, Petitioner would have to raise and exhaust a claim of ineffective assistance of counsel in State court as to this instruction in order to argue attorney error as cause to overstep the procedural default. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Prior to his federal habeas petition, Petitioner did not argue attorney error with regard to the grant of Jury Instruction C-16. (*See* ECF No. 14-9, pp. 8-10, Pet.'s "Motion for Post Conviction Relief"). Therefore, attorney error cannot demonstrate "cause" for the default. Because Petitioner fails to demonstrate cause, the Court need not question whether there is prejudice. *See Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither does Petitioner establish that failure to consider his claim would result in a

fundamental miscarriage of justice. The "fundamental miscarriage of justice" exception is confined to cases of actual innocence where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation and internal quotation marks omitted). A petitioner claiming this exception must present new, reliable evidence and show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (citation omitted). Petitioner has not identified any new, reliable evidence to support his claim. Therefore, he falls short of establishing that a fundamental miscarriage of justice will result if his challenges to Jury Instruction C-16 are not considered on their merits.

Without vitiating the bar, the Court notes that the State court alternatively discussed the merits of Petitioner's claim and found it to be without merit, as the instruction as read with all of the other instructions properly stated the law. *Sneed*, 31 So. 3d at 46-47. Generally, challenges to jury instructions may not form a basis for federal habeas corpus relief. *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Rather, habeas relief may be granted upon review of a challenged jury instruction only where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Hughes v. Johnson*, 191 F.3d 607, 627 (5th Cir. 1999) (citations omitted). In determining whether the instruction was applied in such a way as to violate the Constitution, it must be considered in the context of the instructions as a whole and the trial record. *Id.* at 627-28 (citation omitted). Even then, "there is a strong presumption that errors in jury instructions are subject to harmless-error analysis." *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002). A constitutional error is not harmless, for purposes of a habeas proceeding, "if it 'had substantial and injurious effect or

influence in determining the jury's verdict.'" *Id.* (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993)).

As noted by the Mississippi Court of Appeals, the jury in Petitioner's case was required to find that Petitioner possessed the same intent required as the principal in order to convict him as an aider/abettor. *Sneed*, 31 So.3d at 46. The court found:

> [Instruction] C-11 states the defendant must "participate with the intent to bring about the crime"; C-12 announces the specific intent of "deliberate design to effect death"; and C-16 clearly states that in order to be guilty as an aider and abettor of the murder, that the defendant must "share . . . the same intent" of the principal who committed the murder. Moreover, we note that other instructions stress the State's burden to prove every material element of the crime charged. Additionally, a separate instruction was given defining "deliberate-design" intent element of the crime of murder.

*Sneed*, 31 So. 3d at 46. The court considered Petitioner's argument that Instruction C-16 allowed the jury to find him guilty even if he committed only one element of the crime without finding that the crime was completed, and it determined that the instructions as given in Petitioner's case did not give the jury that option. *Id.* at 47. It specifically noted that Instruction C-11, which informed the jury that it could "not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instruction[s] was committed by some person or persons, and that a defendant voluntarily participated in its commission with the intent to violate the law" was "taken almost verbatim from the Fifth Circuit's model instruction adopted by the Mississippi Supreme Court" in order ensure that the jury was required to find all of the elements of the crime were proved before it could convict any defendant. *Id.* at 45, 47.

Therefore, this claim is procedurally barred, and alternatively, Petitioner cannot show that the grant of Instruction C-16, when read with the jury instructions as a whole, so infected the trial

that Petitioner's conviction violates due process. The alternative merits determination by the Mississippi Court of Appeals is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. Accordingly, federal habeas relief is denied as to this claim.

### III. Weight of the Evidence

In his third claim for relief, Petitioner challenges the weight of the evidence to support his conviction, arguing that the evidence shows that he only kicked the victim once in his side, and that he fled when Brady began hitting the victim with a golf club. The Mississippi Court of Appeals reviewed this claim and found that the verdict was not contrary to the weight of the evidence. *Sneed*, 31 So. 3d at 43-44. The court noted that the jury could have found aiding and abetting as a basis for Petitioner's murder conviction, and it noted that the jury was instructed as to manslaughter and determined that the evidence supported a conviction of murder. *Id.* at 44. The court also determined that Dr. Hayne's medical testimony, which established an intent to kill, was "in direct conflict" with Foster's testimony that Petitioner only kicked the victim once. *Id.* This conflict, the court found, "creates a factual dispute which the jury resolves." *Id.* Noting that the jury resolved factual discrepancies against the defendants, the court found that the jury verdict was not contrary to the overwhelming weight of the evidence. *Id.*

Unlike a claim challenging the sufficiency of the evidence, a claim challenging the weight of the evidence requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). The jury, not a reviewing court, bears "the responsibility. . . fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 45 n.21 (citation omitted). Therefore, the weight of the evidence is not an issue assessed on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas

corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"). Accordingly, Petitioner is not entitled to habeas relief  as to his challenge to the weight of the evidence.

Out of an abundance of caution, the Court will construe Petitioner's challenge as one to the sufficiency of the evidence.  A challenge to the sufficiency of the evidence forms a basis for federal habeas relief only when the evidence, viewed in the light most favorable to the prosecution, is such that no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under this standard, the fact-finder may find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citation omitted); *see also United States v. Surtain*, 519 F. App'x 266, 274, 2013 WL 1846625 at *6 (5th Cir. May 2, 2013) ("The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.") (citation omitted).

As noted by the Mississippi Court of Appeals in its discussion of other defendants' challenges to the sufficiency of the evidence, the jury in Petitioner's case "had to find that, beyond a reasonable doubt, one of the individual defendants actually committed the blow which killed Fair, and that the particular defendants aided, counseled, or encouraged another in the commission of Fair's murder." *Sneed*, 31 So. 3d at 41.  Dr. Hayne testified that Fair died as a result of compression to his chest, and that his injuries were consistent with being kicked or stomped.  There was testimony that Petitioner kicked the victim.  There was no testimony that any of the defendants tried to stop any other co-defendant from kicking the victim.  As noted by

the court on direct appeal, "[t]he fatal injuries to Fair's chest indicated he was beaten so severely as to break his rib, to lacerate his lungs, and to cause over three quarts of blood to hemorrhage into his chest cavity – certainly sufficient evidence of intent to kill by all five Defendants." *Id*. at 42.

The facts recited above provide evidence from which a rational trier of fact could have found the essential elements of murder in this case beyond a reasonable doubt. The rejection of Petitioner's claim was not "objectively unreasonable." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (holding that *Jackson* claims "are subject to two layers of judicial deference," and that habeas relief may be granted only upon a finding that the rejection of the claim was "objectively unreasonable"). Additionally, Petitioner has not presented evidence to overcome the deference afforded to the fact-finding by the appellate court, *see* 28 U.S.C. § 2254(e)(1), and he has failed to show that the decision rejecting this claim was based on an unreasonable determination of facts in light of the evidence presented. Accordingly, federal habeas relief is denied as to this claim.

### IV. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *See, e.g., Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). A federal habeas petitioner's claim that he was denied the effective assistance of counsel at trial is generally measured by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must establish that (1) his trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and (2) the deficient performance prejudiced his defense. *See id.* at 687; s*ee also Boyle v. Johnson*, 93 F.3d 180, 187

(5th Cir. 1996) (finding that ineffective assistance of counsel claims are analyzed under the *Strickland* framework). A petitioner satisfies *Strickland*'s prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See id.* at 687; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). In a case where the state court has rejected the merits of a petitioner's ineffectiveness claim, the "pivotal question" in a federal habeas proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011).

The Mississippi Supreme Court considered Petitioner's claims of ineffective assistance and, citing *Strickland*, found that Petitioner "fail[ed] to specifically demonstrate that but for counsel's deficient performance the results of the trial would have been different." (Answer, Ex. B).

## A. Failure to investigate

Petitioner argues that his trial counsel rendered ineffective assistance by failing to conduct any pretrial investigation. Specifically, he alleges that counsel failed to investigate the involvement of Dennis Thompson in this case.

Respondents argue, and the Court agrees, that Petitioner has failed to present anything to the Court to support his claim that counsel failed to investigate Thompson's involvement in this case. To the contrary, the record reflects that counsel for Petitioner called the only defense witness presented in this case, and she testified that Thompson was seen standing over the

victim's body rifling through his pockets.  (*See* SCR vol. 5, 518-31).  Moreover, in his closing

argument, Petitioner's counsel communicated to the jury that the testimony established that

Thompson was possibly involved in the victim's death.  (*See* SCR vol. 6, 621-22).  Petitioner's

claim that trial counsel failed to investigate is conclusory and contrary to the record.  A

conclusory allegation does not raise a constitutional issue in a federal habeas proceeding.  *See,*

*e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (quotation marks omitted).

**B.  Failure to cross-examine adverse witnesses**

Petitioner argues that his defense counsel failed to thoroughly cross-examine adverse

witnesses and highlight factors to lend credibility to his defense.  He fails, however, to allege

what cross-examination should have been conducted.  As previously noted, a conclusory

allegation of ineffective assistance does not raise a constitutional issue.  *See e.g., Miller,* 200

F.3d at 282.

**C.  Failure to object to improper evidence**

Petitioner argues that trial counsel failed to register objections to improper evidence

presented at trial.  He does not, however, specify what objections should have been lodged.

Petitioner's conclusory allegation of ineffective assistance fails to raise a constitutional issue.

*See, e.g., Miller*, 200 F.3d at 282.

**D.  Failure to object to Dr. Hayne**

Petitioner argues that counsel rendered ineffective assistance in failing to object when the

trial court allowed Dr. Steven Hayne to testify as an expert.  Specifically, Petitioner claims that

counsel failed to investigate Dr. Hayne's background, certifications, and qualifications to testify

as an expert in the field of forensic pathology.

In *Lima v. State*, the Mississippi Supreme Court upheld Dr. Hayne's status as a qualified

expert in the field of forensic pathology. *Lima*, 7 So. 3d 903, 907 (Miss. 2009). Accordingly, there was no basis for counsel's objection. Counsel is not ineffective for failing to raise a meritless objection. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

**E. Failure to object to jury instructions C-13, C-14, and C-15**

Petitioner alleges that trial counsel rendered ineffective assistance in failing to object to jury instructions C-13, C-14, and C-15, which he contends misled and confused the jury.

During the jury instruction conference, the trial court noted that Instruction C-13, the "deliberate design" instruction, was a "model instruction." (SCR vol. 5, 547; *see also* SCR vol. 1, 110). Neither the prosecutor nor any of the defense counsel objected to the giving of the standard instruction. (*See id.*). Instructions C-14 and C-15 instructed the jury on the crime of manslaughter. (*See* SCR vol. 1, 111-12). Petitioner's counsel initially proffered his own version of a manslaughter instruction and withdrew it in light of the instruction given by the court. (SCR vol. 5, 562). None of the defense attorneys objected to having the jury instructed on manslaughter. (*See* SCR vol. 5, 547-49).

Petitioner has identified no deficiency in defense counsel's failure to object to these instructions. Instruction C-13 tracks the language in the Mississippi Model Jury Instructions for criminal cases. Miss. Model Jury Instructions - Criminal § 3:13. Counsel is not ineffective for failing to raise a meritless objection. *See Clark,* 19 F.3d at 966. Additionally, even if the Court were to assume that counsel should have objected to the manslaughter instructions, Petitioner has not demonstrated that he was prejudiced by the inclusion of a lesser-included offense instruction. The jury was instructed as to both manslaughter and murder and chose to convict Petitioner of murder. "An error by counsel, even if professionally unreasonable, does not warrant setting aside

the judgment of a criminal proceeding if the error had no effect on the judgment." *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986) (citations omitted). Accordingly, the decision rejecting this claim is neither contrary to, nor an unreasonable application of, *Strickland* or its progeny.

**F. Failure of appellate counsel to raise objections to trial counsel's performance**

Petitioner argues that appellate counsel rendered ineffective assistance in failing to raise on direct appeal the claims of ineffective assistance of trial counsel that Petitioner raised in his motion for post-conviction review.

Counsel is under no duty to raise "every meritorious claim that may be pressed on appeal." *Green v. Johnson*, 116 F.3d 1125-26 (5th Cir. 1997). Moreover, these issues were raised on post-conviction and heard on their merits by the State's highest court. Therefore, Petitioner cannot demonstrate any prejudice as a result of appellate counsel's failure to raise the issues on appeal. Accordingly, the decision rejecting this claim is neither contrary to, nor an unreasonable application of, *Strickland* or its progeny.

## V. Witness Testimony

Petitioner argues that his "conviction stems from inconsistent witnesses' testimony that was unworthy of belief." (ECF No. 1, 12). Respondents argue, and the Court agrees, that this claim is another challenge to the weight of the evidence. For the reasons set forth in its discussion of Ground III, *supra*, at 14-16, the Court finds that this claim does not warrant federal habeas relief.

## Certificate of Appealability

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless

Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA on any claim rejected on its merits, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Applying these standards, the Court concludes that a COA should be denied in this case.

### Conclusion

It is hereby ordered that Petitioner's petition for a writ of habeas corpus is **DENIED**, and that this action is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any pending motions are **DISMISSED AS MOOT**. A final judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 27th day of June, 2014.

/s/ Michael P. Mills
**MICHAEL P. MILLS**
**U.S. DISTRICT JUDGE**